# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BLACK DOG OUTFITTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 09-CV-00663-E-EJL |
| vs. | ) | |
| | ) | |
| STATE OF IDAHO OUTFITTERS AND | ) | **MEMORANDUM ORDER** |
| GUIDES LICENSING BOARD, UNITED | ) | |
| STATES DEPARTMENT OF THE | ) | |
| INTERIOR/BUREAU OF LAND | ) | |
| MANAGEMENT AND UNITED STATES | ) | |
| DEPARTMENT OF AGRICULTURE/UNITED | ) | |
| STATES FOREST SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendant United States Department of the Interior/Bureau of Land Management and United States Department of Agriculture/United States Forest Service's (the "Federal Defendants") Motion to Dismiss Third Amended Complaint. Defendant State of Idaho Outfitters and Guides Licensing Board ("IOGLB") has filed a non-opposition to the Motion. The Motion is made under Federal Rule of Civil Procedure 12(b)(6). The matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Black Dog Outfitters, Inc. ("Black Dog"), is an Idaho corporation that provides outfitting services for hunting and fishing excursions on the Snake River in Idaho. The current regulatory scheme allows for only eight permits and eleven licenses for outfitters on the South Fork of the Snake River. Black Dog seeks to have additional permits and licenses issued for the South Fork, arguing the limitations imposed by the Defendants are arbitrary and capricious as there is no scientific basis or study for the limitations. In October of 2007, Black Dog undertook its own investigation into the availability of outfitting opportunities on the South Fork on the Snake River and concluded that the river was not being used to capacity. (Dkt. No. 56, pp. 5, 8-9.) Black Dog alleges that the various state and federal agencies responsible for regulation of the South Fork had never, prior to the summer of 2008, conducted a capacity study nor shown there is no basis for the current limitations on the numbers of permits and licenses. (Dkt. No. 56, pp. 7-8, 10.)

Though acknowledging the Federal Defendants indicated in 2008 they would undertake a capacity study in response to its complaints, Black Dog contends the study never materialized. (Dkt. No. 56, p. 11.) Black Dog further questions the viability of any such study's objectivity or scientific basis and, instead, argues it is only intended to confirm the *status quo*. (Dkt. No. 56, pp. 19-20.) As a result of the findings of its own study, Black Dog submitted applications to each of the Defendant agencies for outfitting opportunities on four different resources. (Dkt. No. 56, p. 9.) These applications were denied, Black Dog argues, without any basis other than "the fact that the government agencies noted that there were 'no available licenses or permits' for the resources." (Dkt. No. 56, p. 9.)

Black Dog further alleges the Defendants took discriminatory action toward it by restricting it from utilizing its waterfowl hunting license because of its complaints. (Dkt. No. 56, pp. 11-12.) Black Dog contends there was no opportunity to comment on these actions that the Defendants took intending to intimidate and retaliate against it. (Dkt. No. 56, pp. 12-13.)

In addition, Black Dog argues the existing permits are held almost exclusively by two owners, creating a monopolistic situation that is enabled by the Federal Defendants and the IOGLB. (Dkt. No. 56, pp. 14-16.) The Defendants, Black Dog argues, implicitly exempts these two owners and their operations from regulations while applying them to exclude Black Dog. (Dkt. No. 56, p. 21.)

On December 18, 2009, Black Dog, filed its initial Complaint in this action alleging jurisdiction under 28 U.S.C. § 1331, § 1367 and § 1337. (Dkt. No. 1.) The Complaint brought the action pursuant to 28 U.S.C. § 2201, seeking declaratory relief against the Federal Defendants and the IOGLB in order to clarify the rights between the parties and to monitor the ongoing capacity study to ensure it is fair and neutral. (Dkt. No. 1.) Black Dog further sought to have the government restrictions on the South Fork declared unconstitutional with further allegations to that affect brought under the Commerce Clause. (Dkt. No. 1.) On May 10, 2010, the Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court denied the Motion to Dismiss and granted Black Dog's request to amend its Complaint. (Dkt. No. 45.)

Thereafter, Black Dog filed several amended Complaints. (Dkt. Nos. 52, 53, 56.) The Court allowed some of the amendments but ultimately cut off the repeated filings and deemed the Third Amended Original Complaint ("Amended Complaint") to be the final submission in this

case. (Dkt. Nos. 56, 58.) In the Amended Complaint, Black Dog again seeks declaratory relief pursuant to the First, Fifth, and Fourteenth Amendments as well as the Commerce Clause; it raises the following causes of action:

I.      Violation of the First Amendment by Retaliation

II.     Multiple Use and Sustained Yield Act Violations

III.    Violation of Equal Protection

IV.     Violation of the Right to Due Process and Property

V.      Violation of the Commerce Clause through the Memorandum of Understanding among the Federal and State Entities

VI.     The Regulations of the IOGLB have been pre-empted by Federal Statutes

(Dkt. No. 56.) The Federal Defendants have filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 65.)

## STANDARD OF LAW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

### 1.      APA Claim: Final Agency Action

The claims raised in Black Dog's Amended Complaint can only be properly brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et al*. In this Motion, the Federal Defendants argue the claims should be dismissed mainly because there has been no "final agency action" as required by the APA. (Dkt. No. 65.) Because this argument generally applies to all of the claims, the Court will address it first.

"The APA expressly declares itself to be a comprehensive remedial scheme: it states that a 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review'... and then sets forth the procedures for such review" *Western Radio Serv. Co. v. United States Forest Service*, 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting 5 U.S.C. §§ 702, 704, 706). "The APA's

comprehensive provisions ... allow any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'" *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988)). "Specifically, the APA authorizes a reviewing court to:

(1)      compel agency action unlawfully withheld or unreasonably delayed; and

(2)      hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity....

5 U.S.C. § 706(1)-(2); *see also Darby v. Cisneros*, 509 U.S. 137, 143-47 (1993).

Section 704 of the APA provides that the cause of action contained in § 702 only applies to final agency actions. "The APA's comprehensive provisions... allow any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court." *Western Radio*, 578 F.3d at 1122 (quoting *Webster*, 486 U.S. at 599 (quoting 5 U.S.C.A. §§ 701-706).

The Ninth Circuit has recognized this requirement in *Pacific Coast Federation of Fishermen's Ass'n, Inc. v. Nat. Marine Fisheries Serv.*, 265 F.3d 1028 (9th Cir. 2001), where it held that "only final agency decisions are subject to review under the APA." *Id.* at 1033. In order "for an administrative agency action to be considered final, '(1) the action should mark the consummation of the agency's decisionmaking process; and (2) the action should be one by which rights or obligations have been determined to flow.'" *Id.* at 1033 (quoting *Ecology Center, Inc. v. United States Forest Serv.*, 192 F.3d 922, 925-26 (9th Cir. 1999)); *see also Bennett v.*

*Spear*, 520 U.S. 154, 177-78 (1997). For agency action to be final it must "impose an obligation,

deny a right or fix some legal relationship." *City of San Diego v. Whitman*, 242 F.3d 1097, 1102

(9th Cir. 2001).

In this case, the Federal Defendants maintain "there has been no final agency action with

respect to the permit request" because

> No additional new permits or authorizations are currently available. The agencies
> have not completed the administrative process to determine whether or not there is
> capacity to accommodate additional commercial use. Because it has not been
> determined that there is available capacity to authorize additional commercial uses
> of these resources the agencies have not yet accepted or considered any permit
> applications.

(Dkt. No. 65, p. 4.) In its Amended Complaint, however, Black Dog alleges it submitted

applications to each of the Defendant agencies for outfitting opportunities on four different

resources:

1.     SS1 Section of the Snake River - South Fork;

2.     TE3 Section of the Teton River

3.     SH2 Section of the Snake River, Henry's Fork; and

4.     Palisades Reservoir.

(Dkt. No. 56, p. 9.) These applications were denied, Black Dog argues, without any basis other

than "the fact that the government agencies noted that there were 'no available licenses or

permits' for the resources." (Dkt. No. 56, p. 9.) Black Dog further alleges it renewed its request

for issuance of licenses and permits for the same four resources after learning, in the late fall of

2008, that the promised capacity study had been cancelled by BLM. (Dkt. No. 56, p. 11.) As to

these renewed requests, Black Dog states, the Defendants' response was that they were "not available, and therefore would not be issued" to Black Dog. (Dkt. No. 56, p. 11.)

Further, the parties do not agree on whether the capacity study is being undertaken and what, if any, impact the status of any such study has here. (Dkt. No. 45, p. 12.) The Federal Defendants maintain the administrative process is not completed because it is undetermined whether there is available capacity to authorize additional uses of the resources at issue. (Dkt. No. 65, p. 4.) Therefore, they argue, the agencies have not yet acted on or even considered any additional permit applications. Black Dog, on the other hand, presents varying positions on its position regarding whether the capacity study is on going.

In the Amended Complaint, Black Dog disputes the validity of the capacity study which gives some indication that Black Dog believes it was either conducted or is still ongoing. (Dkt. No. 56, pp. 19-22.)[1] However, the Amended Complaint also alleges the capacity study has been "clandestenly canceled" by the BLM without the public being told. (Dkt. No. 56, pp. 10-11.) In its Response, Black Dog states the "agency's decision to not issue the permit is separate from the alleged capacity study that is now taking place." (Dkt. No. 67, p. 4.) Black Dog's Response, however, goes on to disagree that there has been no final action. (Dkt. No. 67, p. 4.) Instead, Black Dog argues the final agency action here is the "refusal to issue [Black Dog] the requested permit, twice, without conducting the capacity study at that time, is enough to constitute the consummation of the agency's decision making process." (Dkt. No. 67, p. 4.) From this most recent statement, it seems Black Dog's position is that the status of the capacity study is

---

[1] Black Dog's challenge the validity of the current capacity study raises different issues not addressed here. (Dkt. No. 56, pp. 19-20.)

irrelevant to the final agency action determination which, Black Dog argues, is the agencies'

refusal to issue it the requested permits without conducting the study. The Federal Defendants

couch the argument as the failure to "authorize Black Dog, Inc. to conduct additional commercial

outfitting and guiding operations...Black Dog was not given the permit it sought and attempts 'to

place limits on Black Dog's waterfowl permit' were made in retaliation...." (Dkt. No. 65, pp. 3-

4.)

Based on the foregoing and construing the allegations in the light most favorable to Black

Dog, the Court finds that, if true, the allegations in the Amended Complaint regarding the denial

of Black Dog's applications may be a final agency action.[2] This is not a case where the plaintiff is

challenging forest-wide management practices and monitoring efforts, or lack thereof, which are

"generally not amenable to suit under the APA because they do not constitute final agency

actions." *Ecology Center v. Castaneda*, 574 F.3d 652, 658 (9th Cir. 2009) (citing *Neighbors of*

*Cuddy Mountain*, 303 F.3d at 1067; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990);

*Ecology Ctr.*, 192 F.3d at 925-26; 5 U.S.C. § 704).[3] Instead, in this case Black Dog's Amended

---

[2] Black Dog argues its First Amendment Claim is not precluded because of its status as a
corporation. (Dkt. No. 67, p. 3.) The Federal Defendants do not raise any argument that Black Dog's
status as a corporation precludes its First Amendment Claim. The argument in regards to Black Dog's
status as a corporation is raised by the Federal Defendants only as to the Due Process Clause Claim and
will be discussed below accordingly. (Dkt. No. 65, p. 12.)

[3] In *Ecology Center*, the Ninth Circuit stated "[c]hallenges to forest-wide management practices
or claims that the Forest Plan does not comply with NFMA must be made in the context of site-specific
actions. The plaintiff must allege a 'specific connection' between the challenged site-specific action and
the general practice." 574 F.3d at 658 (citation omitted). Similarly, "where review is sought under the
general review provision of the APA, the agency's decision must be a final agency action and the
plaintiffs 'must establish they have suffered a legal wrong, or will be adversely affected or aggrieved
within the meaning of the relevant statute." *California Wilderness Coalition v. United States Dept. Of*
*Energy*, 631 F.3d 1072, 1099 (9th Cir. 2011) (discussing *Northcoast Environmental Center v. Glickman*,
136 F.3d 660 (9th Cir. 1998). We proceeded to comment that the agency action "must (1) be federal, (2)
'major', and (3) have a significant environmental impact." *Id.*

Complaint challenges alleged denials of four permits applications. Regardless of the status of the capacity study, if the facts are as Black Dog has alleged and the agencies denied its applications for these permits and/or licenses that denial is a final agency action under the APA.

The Defendants maintain Black Dog has been neither granted nor denied any additional permits or license. The Ninth Circuit recently held that an agency's decision not to act is not an "action" under the APA's § 7(a)(2) because "'inaction' is not 'action.'" *Karur Tribe of Cal. v. USFS*, ___ F.3d ___ 2011 WL 1312564, at *1 (April 7, 2011 9th Cir.). There, the Ninth Circuit concluded the Forest Service's decision not to require a Plan of Operations on a miner's Notice of Intent was not an "agency action" for purposes of the Endangered Species Act. *Id.* The case here, however, is different. As stated above, the allegations in the Amended Complaint are that Black Dog applied for and was denied four permits. (Dkt. No. 56.) The standard on this Motion requires the Court to take those allegations as true in determining whether the Amended Complaint states a plausible claim for relief. *See Iqbal*, 129 S. Ct. at 1950. The allegation that Black Dog had applied for these four particular permits and been denied is sufficient, when drawing all reasonable inferences in favor of Black Dog, to satisfy the pleading requirements. *Mohamed*, 579 F.3d at 949. These allegations go beyond the unacceptable "threadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Whether the claims survive a later more probing test on any motion for summary judgement is less clear.[4]

---

[4] There was no additional evidence offered by the parties upon which to convert this Motion into a motion for summary judgment which would have applied a different standard of review. Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Branch v. Tunnel*, 14 F.3d 449, 453 (9th Cir. 1993). However, if a Rule 12(b)(6) motion raises "matters outside the pleading" and these matters are "presented to and not

The BLM and Forest Service further argue they are vested with the discretion regarding the issuance, granting, and/or denying of permits and until the agencies act on that discretion there is no final agency action. (Dkt. No. 65, pp. 4-6.) The Supreme Court has held that when Congress commits to an agency discretionary authority to perform an act without prescribing meaningful governing standards, that exercise of discretion is placed beyond judicial review by section 701(a)(2) of the Administrative Procedures Act (APA). *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also* 5 U.S.C. § 701(a)(2) (authorizing judicial review of final agency action "except to the extent that ... agency action is committed to agency discretion by law"). That decision does not, however, apply to agency decisions made discretionary by regulation, that is, by the agency itself, effectively permitting the agency to insulate its own decisions from judicial review. In *Kucana v. Holder*, ___ U.S. ___, 130 S.Ct. 827, 840 (2010) (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), the Supreme Court concluded that such a scheme contravenes the "presumption ... 'that executive determinations are generally subject to judicial review,'" "the longstanding exercise of judicial review of administrative rulings [on procedural matters]," *id.* at 831, and the "congressional design" that "[Congress], and only [Congress], would limit the federal courts' jurisdiction," *id.* at 840.

Whether or not the Defendants were vested with such discretion does not, in and of itself, answer the question of whether a final agency action was taken so as to give rise to a claim under the APA. Here, Black Dog has alleged the Defendants denied his permit applications and, in

_____

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* at 453. When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

doing so, acted arbitrarily and capriciously. The final action is the denial of its permit applications. On the standard applicable at this stage, the allegations that the Defendants denied Black Dog its permit applications are sufficient to state a plausible claim for relief. Though the Defendants' contend otherwise in their briefing, they have not provided anything beyond their bare arguments to show they are entitled to a dismissal as a matter of law. As such, the Court finds the Amended Complaint is sufficient to survive the Motion to Dismiss as to the Defendants' argument that no final agency action has been alleged. The Court will address the Defendants' other arguments on the particular claims below.

## 2.    Violation of the First Amendment by Retaliation

The Amended Complaint raises a retaliation claim against the Defendants alleging they violated Black Dog's First Amendment right to free speech by regulating against it because of Black Dog's inquiries, expressions of concerns, and requests for information regarding the use of allocated resources. (Dkt. No. 56, p. 22.) In particular, Black Dog points to the quick dismissals of its information requests, limits and attempts to place limits on its use of its waterfowl permit, and denial of its application for an outfitter's license. (Dkt. No. 56, p. 23.) The Federal Defendants argue the Amended Complaint fails to allege sufficient facts to support a claim for First Amendment retaliation because no discrimination has been plead. (Dkt. No. 65, p. 3.)

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 896. "Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Id*. at 898 (citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (striking down content-based restriction)). "Prohibited, too, are

restrictions distinguishing among different speakers, allowing speech by some but not others." *Id.* at 899 (citation omitted). "As instruments to censor, these categories are interrelated: Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* The Supreme Court has recognized "our longstanding recognition that the Government may not retaliate for exercising First Amendment speech rights...." *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) (citing *Rankin v. McPherson*, 483 U.S. 378 (1987) (landowner brought a *Bivens* case against the BLM).

As to the retaliation claim, Black Dog argues the BLM has improperly retaliated by restricting its waterfowl hunting, for which it holds a license on the South Fork of the Snake River, to only USFS lands. (Dkt. No. 56, p. 12.) Likewise, Black Dog argues the IOGLB altered the terms and conditions of its waterfowl hunting license by "unilaterally" limiting it to only areas in which the USFS land was not adjacent to the South Fork; essentially eliminating its ability to conduct waterfowl hunting operations on a majority of the South Fork of the Snake River. (Dkt. No. 56, p. 12.) No hearing or due process was afforded to it, Black Dog claims, before this alteration by IOGLB was made. Its due process rights were also violated by the BLM, Black Dog alleges, when it took "selective action in an attempt to 'regulate' [Black Dog] off the [South Fork] once and for all" by improperly regulating the state lands upon which Black Dog had a license to conduct waterfowl hunting. (Dkt. No. 56, p. 13.)

The Defendants state no discrimination has been plead and conclude, without citation to authority, that "the court can use its experience and common sense to infer that a permit to conduct outfitting on land managed by the Forest Service does not confer a right to use lands

managed by the BLM." (Dkt. No. 65, p. 6.) Defendants further question the *Bivens* and § 1983 cases relied upon by Black Dog in its briefing to support the First Amendment Claim.

This claim appears to be premised on the alleged retaliatory actions of the BLM and IOGLB in limiting Black Dog's waterfowl hunting license. The Court agrees with the Defendants that Black Dog cannot raise *Bivens* or § 1983 claims here.[5] The First Amendment Claims must arise as provided for in the APA. To that end and construing the allegations as true and in the light most favorable to Black Dog, the Court finds the allegations that the BLM and/or IOGLB took retaliatory actions to limit Black Dog's waterfowl hunting license which were contrary to the regulatory requirements for doing so are sufficient to give rise to its claim. Though the Court questions whether such claim will survive a later more probing inquiry, at this stage the inferences are drawn in Black Dogs favor and, in doing so, the allegations in the Amended Complaint are plausible. The Motion is denied as to this claim.

**3.      Multiple Use and Sustained Yield Act Violations ("MUSYA")**

Black Dog raises a claim under the MUSYA alleging the Defendants have violated the purpose of the statute in failing to complete a capacity study to determine the proper utilization of the South Fork and other resources and allowing for the creation of monopolies. (Dkt. No. 56, p. 24.) The Federal Defendants counter that this claim fails because the broad discretionary

---

[5] For example, as to the First Amendment Claim, both cases cited by Black Dog to support its claim were raised as § 1983 and *Bivens* actions. (Dkt. No. 56, p. 23.) "[T]he Supreme Court has held that no *Bivens* remedy is available against a federal agency...." *Western Radio Services Co. v. United States Forest Service*, 578 F.3d 1116, 1119 (9th Cir. 2009) (citing *FDIC v. Meyer*, 510 U.S. 471, 484 (1994) (affirming the district court's dismissal of the *Bivens* claims against the Forest Service itself). Thus, Black Dog's First Amendment Claim as raised in the context here must be brought under the APA. *See* 5 U.S.C. § 702; *see also Western Radio Services Co. v. United States Forest Service*, Civ. No. 04-1346-AA, 2008 WL 427787, at *4 (D.Or. Feb. 12, 2008).

language of the MUSYA relied upon by Black Dog has been construed to place the discretion squarely with the agencies. (Dkt. No. 65, p. 8.) In addition, the Federal Defendants oppose the claim that they have violated the Sherman Antitrust Act by allowing for the creation of monopolies as such a claim is not actionable against an instrumentality of the federal government. (Dkt. No. 65, p. 9.)

The Amended Complaint alleges the USFS failed to comply with the general purpose provisions of the MUSYA, 16 U.S.C. §§ 528-31, by failing to complete a capacity study to determine the proper utilization of the resource in question. (Dkt. No. 56, pp. 23-24.) Such allegations fail to state a plausible claim for relief. The claim's allegations challenge the agencies' compliance with the general provisions of the MUSYA which, even drawing the inferences in favor of Black Dog, are insufficient. *See Ecology Center*, 574 F.3d at 658 ("[c]hallenges to forest-wide management practices or claims that the Forest Plan does not comply with NFMA must be made in the context of site-specific actions. The plaintiff must allege a 'specific connection' between the challenged site-specific action and the general practice."); *California Wilderness Coalition*, 631 F.3d at 1099 ("where review is sought under the general review provision of the APA, the agency's decision must be a final agency action and the plaintiffs 'must establish they have suffered a legal wrong, or will be adversely affected or aggrieved within the meaning of the relevant statute."). Accordingly, the Court will grant the Motion to Dismiss as to the MUSYA claim.

As to the claim raised under the Sherman Antitrust Act, because the Federal Defendants here are instrumentalities of the federal government they are immune from antitrust liability. *See United States Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 745 (2004) ("The Sherman Act imposes liability on any 'person.' The word 'person' ... shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country. However, 'person' does not include the federal government."). Accordingly, the Court grants the Motion to Dismiss as to this claim.

## 4.     Violation of Equal Protection

The Amended Complaint raises an Equal Protection Clause Claim under the Fifth and Fourteenth Amendments alleging disparate treatment between Black Dog and the outfitters that have been allowed permits on the South Fork. (Dkt. No. 56, p. 26.) In response, the Federal Defendants maintain there is no showing of similarly situated applicants for the additional permits Black Dog seeks; particularly since there are no additional permits or licenses available. (Dkt. No. 65, pp. 10-11.) In addition, the Federal Defendants contend that Black Dog does not allege discrimination as to the existing permits and points out that Black Dog holds a permit.

"Both the Equal Protection Clause and the APA prohibit agencies from treating similarly situated petitioners differently without providing a sufficiently reasoned justification for the disparate treatment." *Muwekma Ohlone Tribe v. Kempthorne*, 452

F.Supp.2d 105, 115 (D.D.C. 2006) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098,

1102-03 (D.C. Cir. 2005) ("To prevail on [its] equal protection claim, [a plaintiff must]

demonstrate that [it] was treated differently than similarly situated [parties] and that the

[agency's] explanation does not satisfy the relevant level of scrutiny.") (citations omitted).

The Court disagrees with the Federal Defendants' contention that Black Dog has

not alleged it was discriminated against as to the existing permits but only as to additional

permits. (Dkt. No. 65, pp. 10-11.) Black Dog has alleged it applied for and was denied

four permits. In its Equal Protection Clause Claim Black Dog likens itself to "other

permit holders" and, specifically, to the two outfitters who hold the majority of the

existing allocated permits. (Dkt. No. 56, pp. 26-27.) In doing so, Black Dog is attempting

to demonstrate disparate treatment between similarly situated applicants as to the existing

allocated permits. Black Dog's claim is that it is similar to the current permit holders but

that it has been treated differently from them, by being denied permits, without any

reasoned justification. In addition, Black Dog's Amended Complaint raises the "class of

one" argument. (Dkt. No. 56, p. 26.)[6] Construing these allegations in favor of Black Dog,

the Court finds they state a plausible claim for relief by alleging similarly situated permit

holders and/or applicants were treated differently without providing a sufficiently

---

[6] Successful Equal Protection claims have been recognized when brought by a "class of one" where the plaintiff has alleged that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Section 1983 action). The Ninth Circuit, however, has indicated that such actions are disfavored because they threaten to "provide a federal cause of action for review of almost every executive or administrative government decision." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (discussing a case alleging employment discrimination by the government).

reasoned justification for the disparate treatment. As such, the Motion is denied as to this Claim.

**5.     Violation of the Right to Due Process and Property**

Black Dog's Due Process Clause Claim alleges a violation of its Fifth and Fourteenth Amendment rights in depriving it of its liberty and property interests in its business without due process of law and/or an opportunity to be heard. (Dkt. No. 56, p. 27.) The Federal Defendants counter that such rights are afforded to persons, not corporations and, therefore, fails to state a claim as a matter of law. (Dkt. No. 65, p. 12.)

"The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law." *Thomas v. Independence Tp.*, 463 F.3d 285, 297 (3rd Cir. 2006) (citation omitted). As alleged here, the liberty and property clauses of the Fourteenth Amendment, made applicable to the federal government through the Fifth Amendment, protects the "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference...." *Piecknick v. Commonwealth of Pa.*, 36 F.3d 1250, 1259 (9th Cir. 1994) (citations omitted). "It is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment." *Id*. at 1261. "[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits ... brought directly under the due process clause." *Id*. (citing

*Bernard v. United Township High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993)).

"'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.'" *Id.* (citation omitted).

These cases discussing the liberty interest to pursue a particular "calling or occupation," however, have all applied to individuals and claims brought pursuant to § 1983. The Plaintiff here is a corporation. Black Dog maintains these rights secured by the Due Process Clauses are afforded to corporations; citing to *SBC Comm., Inc. v. F.C.C.*, 981 F.Supp. 996, 1003 n. 4 (N.D. Tex. 1997)[7] which in turn cites to *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, (1984). (Dkt. No. 67, p. 8, n. 14.) The due process right applied to the corporation in *Helicopteros*, however, were the due process requirements necessary for a court to exercise personal jurisdiction over a nonresident corporate defendant. *Helicopteros*, 466 U.S. at 413-14. The liberty interest asserted here is an individual right, not that of a corporation. *See MFS, Inc. v. Dilazaro*, ___ F.Supp.2d ___, NO. CIV.A. 08-2508, 2011 WL 605812, *47 (E.D. Pa. Feb. 16, 2011); *Burns v. Alexander*, ___ F.Supp.2d ___, NO. CIV.A. 10-522, 2011 WL 836822 (W.D.Pa, March 4, 2011). Because the liberty to pursue a calling or occupation secured by the Due Process Clause is not applicable to a corporation, Black Dog has failed to state a viable Due Process Clause Claim and the Motion to Dismiss is granted on this claim.

---

[7] This decision was reversed by *SBC Comm., Inc. v. F.C.C.*, 154 F.3d 226 (5th Cir. 1998) (holding no constitutional violation existed based on the Bill of Attainder Clause). In this case, the Fifth Circuit recognized the same cases establishing the constitutional rights which apply in the corporate setting. *Id.* 154 F.3d at 234 n. 11.

**6.      Violation of the Commerce Clause**

In the first Complaint, Black Dog's Commerce Clause Claim alleged that the United States is taking "arbitrary and capricious" action in restraint of trade. (Dkt. No. 27, p. 3.) This Court concluded that "Black Dog misstates the reach of the Commerce Clause. It does not provide a cause of action against the federal government for regulation of commerce, only the states. A contrary conclusion would strip the Commerce Clause of its meaning by preventing the federal government from exercising the regulatory power conferred onto it by the Commerce Clause. As such, the Commerce Clause cannot provide a basis for subject matter jurisdiction or a cause of action in this case with regards to the United States." (Dkt. No. 45, pp. 8-9.) The Federal Defendants argue the Court's prior ruling applies to the Amended Complaint's Commerce Clause Claim as well. (Dkt. No. 65, p. 13.) Black Dog counters that, unlike the claim in the first Complaint, the Amended Complaint's Commerce Clause Claim "has made more specific allegations." (Dkt. No. 67, p. 9.)

Similar to its first Complaint, the Amended Complaint's Commerce Clause Claim asks that "the Court determine whether, in this case, the [Defendants] have overstepped their role in regulating interstate commerce and/or alternatively that their actions have affirmatively discriminated against Black Dog...and other individuals similarly situated by improperly and inappropriately attempting to regulate outfitter activity on the South Fork of the Snake River and other resources" where there is no legitimate government purpose

in doing so and/or such actions are arbitrary and capricious. (Dkt. No. 56, p. 5), (Dkt. No. 67, p. 9.) The Court has reviewed the allegations in the Amended Complaint and, again, finds it to be lacking.

As stated in the prior Order, the Supreme Court has examined the reach of the Commerce Clause as a cause of action and held that "the Commerce Clause is a power-allocating provision, giving Congress pre-emptive authority over the regulation of interstate commerce. It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive 'restriction on permissible state regulation' of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991) (quoting *Hughes v. Oklahoma*, 441 U.S. 322 (1979)). Thus, the Commerce Clause does not provide a cause of action against the federal government for regulation of commerce, only the states. The claim alleged in the Amended Complaint speaks in terms of being "treated evenly," the "free and open competition," and "un-evenhanded distribution." (Dkt. No. 56, p. 28.) Such allegations, however, again do not make up a claim under the Commerce Clause against the Federal Defendants. For these reasons, the Motion to Dismiss is granted on this claim.

## 7.    The Regulations of the IOGLB have been pre-empted by Federal Statutes

Finally, Black Dog argues the IOGLB regulations are preempted by federal statutes, namely: the Wild and Scenic River Act ("WSRA") and the MUSYA. (Dkt. No. 56, pp. 29-30.) The Federal Defendants note in their response that there is no conflict

between the IOGLB and the federal statutes and, therefore, this claim fails. (Dkt. No. 65, p. 13.) Black Dog's response contends the Federal Defendants lack standing to argue a position on this claim as it is directed at the state agency. (Dkt. No. 67, p. 9.) Though the preemption claim is raised against the IOGLB, who has not filed a motion to dismiss, the Court finds the claim fails as a matter of law and cannot be cured by amendment. *See White v. Indymac Bank, FSB*, No. CV. 09-00571 DAE-KSC, 2011 WL 143928, at *2 (D. Hawai'i April 18, 2011) (citing cases); *Ricotta v. California*, 4 F.Supp.2d 961, 968 n. 7 (S.D. Cal. 1998) (Court can, sua sponte and without notice, dismiss a claim against a defendant who has not filed a motion to dismiss, where the claimant cannot possibly win relief.).

"The federal preemption doctrine stems from the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the 'fundamental principle of the Constitution [ ] that Congress has the power to preempt state law.'" *United States v. Arizona*, ___ F.3d ___, No. 10-16645, 2011 WL 1346945, at *2 (9th Cir. April 11, 2011) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). The Ninth Circuit's analysis of a preemption claim

> [M]ust be guided by two cornerstones of [the Supreme Court's] pre-emption jurisprudence. First, the purpose of Congress is the ultimate touchstone in every pre-emption case.... Second, [i]n all preemption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally occupied, ... [courts ] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555 (2009) (internal quotation marks and citations omitted)). "Even if Congress has not explicitly provided for preemption in a given statute, the Supreme Court 'ha[s] found that state law must yield to a congressional Act in at least two circumstances.'" *Id.* (quoting *Crosby*, 530 U.S. at 372). "First, [w]hen Congress intends federal law to occupy the field, state law in that area is preempted." *Id.* (quotations and citation omitted). "Second, even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." *Id.*

Conflict preemption occurs "where it is impossible ... to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young v. Coloma–Agaran*, 340 F.3d 1053, 1055–56 (9th Cir. 2003) (internal quotation marks and citation omitted). Conflict preemption exists in two forms: 1) impossibility and 2) obstacle preemption. *Arizona*, 2011 WL 1346945, *2. Impossibility preemption arises "where it is impossible for a private party to comply with both state and federal law." *Id.* Obstacle preemption arises "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citations omitted).

Here, Black Dog alleges IOGLB's regulations have allowed for results that are "completely inconsistent" with and, therefore, preempted by the WSRA and MUSYA. (Dkt. No. 56, p. 29.) Pointing in particular to the objectives, purposes, and definitions in

these federal statutes, Black Dog argues the IOGLB's regulations have violated the statutes by allowing for "gross underutilization of the natural resources along the Snake and Teton Rivers." (Dkt. No. 56, pp. 31-32.) As the Federal Defendants have pointed out, however, there is no conflict between the IOGLB's regulations and either the MUSYA or the WSRA. Neither statute prevents the State of Idaho from regulating the issuance of outfitter licenses. Moreover, the federal agencies' own regulations require compliance with state laws. *See* 16 U.S.C. § 480; 36 C.F.R. §§ 251.54(e)(1)(i); 43 C.F.R. §§ 8365.1-7. Because no conflict exists between the state and federal laws applicable here, the Court finds Black Dog has failed as a matter of law to state a claim of preemption. The Motion to Dismiss is granted as to this claim.

## CONCLUSION

Black Dog has stated claims under the First Amendment and Equal Protection Clause which, under the standard of review applicable on this Motion, are plausible claims for relief. As to those claims, the Motion to Dismiss is denied. As to the remaining claims, the Court finds Black Dog has failed to state a cause of action that survives the Federal Defendants' Motion to Dismiss under Rule 12(b)(6). As the Court has indicated previously in this case, Black Dog will not be granted further leave to amend its Complaint again as doing so would be futile. Accordingly the Court will deny the Motion to Dismiss as to the First Amendment and Equal Protection Clause claims and grant the Motion as to all other claims.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED** that the Federal Defendants'

Motion to Dismiss Under F.R.C.P. 12(b)(6) (Dkt. No. 65) is **GRANTED IN PART AND**

**DENIED IN PART** as stated herein.

DATED:  **May 13, 2011**

Honorable Edward J. Lodge
U. S. District Judge