UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BLACK DOG OUTFITTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil  09-CV-00663-E-EJL |
| vs. | ) | |
| | ) | |
| STATE OF IDAHO OUTFITTERS AND | ) | **MEMORANDUM ORDER** |
| GUIDES LICENSING BOARD, UNITED | ) | |
| STATES DEPARTMENT OF THE | ) | |
| INTERIOR/BUREAU OF LAND | ) | |
| MANAGEMENT AND UNITED STATES | ) | |
| DEPARTMENT OF | ) | |
| AGRICULTURE/UNITED STATES | ) | |
| FOREST SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Pending before the Court in the above-entitled matter are Defendant United States Department of the Interior/Bureau of Land Management and United States Department of Agriculture/United States Forest Service's (the "Federal Defendants") Motion for Summary Judgment, Defendant State of Idaho Outfitters and Guides Licensing Board's ("IOGLB") Motion for Summary Judgment, and Plaintiff's Motions to Modify and Supplement the Administrative Record. The parties have filed their briefing and the matters are ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs

and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Black Dog Outfitters, Inc. ("Black Dog"), is an Idaho corporation that provides outfitting services for hunting and fishing excursions on the Snake River in Idaho. (Dkt. 56.) Black Dog currently holds certain permits and licenses on the Snake River for waterfowl hunting and related services from various regulatory agencies: IOGLB, the United States Forest Service ("Forest Service"), and the Bureau of Land Management ("BLM"). The claims in this case arise as a result of Black Dog's failed attempts to obtain additional outfitting licenses and permits, in particular to include fishing services, on the Snake River from these same agencies.

The current regulatory scheme allows for only a limited number of permits and licenses to be issued for outfitters on the South Fork of the Snake River. All of the permits and licenses allowed by the regulations have been issued to other outfitters. In October of 2007 Black Dog undertook its own investigation into the availability of outfitting opportunities on the South Fork on the Snake River and concluded that the river was not being used to capacity. (Dkt.  56, pp. 5, 8-9.) As a result of its findings, Black Dog submitted applications to each of the Defendant agencies seeking to have additional outfitting permits/licenses issued to it on four different resources. (Dkt.  56, p. 9.)

Defendants denied Black Dog's permit/license requests generally stating there were no new permits/licenses available under the regulations and none could be created until a capacity study is undertaken to determine whether there is a need for additional permits.

Black Dog argues the denials were without any basis other than "the fact that the government agencies noted that there were 'no available licenses or permits' for the resources." (Dkt. 56, p. 9.) The denials of its applications and requests, Black Dog claims, are arbitrary and capricious as there is no scientific basis or study to support the regulatory limitation on the number of outfitter licenses for the resource. In particular, Black Dog alleges that the various state and federal agencies responsible for regulation of the South Fork had never, prior to the summer of 2008, conducted a capacity study nor shown any basis for the current limitations on the numbers of permits and licenses. (Dkt. 56, pp. 7-8, 10.) Although the Federal Defendants have indicated they would undertake a capacity study in 2008, Black Dog points out the study has never materialized. (Dkt. 56, p. 11.) Black Dog further questions the viability of any such study's objectivity or scientific basis and, instead, argues it is only intended to confirm the *status quo* limiting the number of outfitter permits and licenses. (Dkt. 56, pp. 19-20.)

As part of its investigation and pursuit of new permits/licenses, Black Dog began requesting information to support the findings of its studies that the resource was being underutilized. This included Freedom of Information Act ("FOIA") requests. Thereafter, Black Dog alleges, the Defendants violated its First Amendment Rights to free speech and took discriminatory action toward it by restricting it from utilizing its waterfowl

hunting license because of the complaints and actions Black Dog had taken in regard to its information requests. (Dkt. 56, pp. 11-12.) Black Dog contends there was no opportunity to comment on these actions that the Defendants took intending to intimidate and retaliate against it. (Dkt. 56, pp. 12-13.) In addition, Black Dog points out the existing permits are held almost exclusively by two owners, creating a monopolistic situation that is enabled by the Federal Defendants and the IOGLB. (Dkt. 56, pp. 14-16.) The Defendants, Black Dog argues, implicitly exempts these two owners and their operations from having to comply with regulations while using the regulations to effectively exclude Black Dog. (Dkt. 56, p. 21.)

On December 18, 2009, Black Dog, filed its initial Complaint in this action alleging jurisdiction under 28 U.S.C. § 1331, § 1367 and § 1337. (Dkt. 1.) On May 10, 2010, the Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court denied the Motion to Dismiss and granted Black Dog's request to amend its Complaint. (Dkt. 45.) Thereafter, Black Dog filed its Third Amended Original Complaint ("Amended Complaint") wherein it sought declaratory relief pursuant to the First, Fifth, and Fourteenth Amendments as well as the Commerce Clause. (Dkt. Nos. 56, 58.) On May 13, 2011, the Court granted in part and denied in part the Federal Defendants' Motion to Dismiss leaving only two claims to be resolved in this case: violation of the First Amendment by Retaliation and Violation of Equal Protection. (Dkt. 71.) The Defendants have now each filed Motions for Summary Judgement contesting these claims. Black Dog has filed its Motions to Modify

and Supplement the Administrative Record. The Court now takes up these pending
Motions.

## STANDARD OF LAW

Judicial review of administrative agency decisions under the Administrative
Procedures Act ("APA") is based on the administrative record compiled by the
agency—not on independent fact-finding by the district court. *Camp v. Pitts*, 411 U.S.
138, 142 (1973). Courts may resolve APA challenges via summary judgment. *See Nw.
Motorcycle Ass'n v. United States Dep't Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).
Summary judgment is appropriate where "there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

In reviewing an agency action under the APA, the Court must determine whether
the action is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance
with the law." 5 U.S.C. § 706(2)(A). "Normally, an agency rule would be arbitrary and
capricious if the agency has relied on factors which Congress has not intended it to
consider, entirely failed to consider an important aspect of the problem, offered an
explanation for its decision that runs counter to the evidence before the agency, or is so
implausible that it could not be ascribed to a difference in view or the product of agency
expertise." *MotorVehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29,
43 (1983). The scope of review under the "arbitrary and capricious" standard is narrow
and a court is not to substitute its judgment for that of the agency. *Id.* Nevertheless, the
agency must examine the relevant data and articulate a satisfactory explanation for its

action including a "rational connection between the facts found and the choice made." *Id.*
(citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). In reviewing
that explanation, the court must "consider whether the decision was based on a
consideration of the relevant factors and whether there has been a clear error of
judgment." *Id.* (citing *Bowman Transp. Inc. v. Arkansas-Best Freight Syst.*, 419 U.S. 281,
285 (1975); *Citizens to Preserve Overton Park*, 401 U.S. at 416).

## DISCUSSION

### 1.   Black Dog's Permit History

Black Dog is licensed by the IOGLB for certain boating, fishing, and waterfowl
hunting activities in various areas of the state of Idaho. As relevant to this action, Black
Dog holds a license to conduct waterfowl hunting on the South Fork of the Snake River.
(Dkt. 56.)[1] In February of 2008, Black Dog's license was amended to allow it to provide
boating services on the Snake River solely for purposes of transporting waterfowl hunting
clients during the season for waterfowl hunting in the areas in which Black Dog is
licensed to engage in waterfowl hunting activities. (IOGLB 265, 1553-58, 1562.)

In June of 2008, Black Dog appeared before the IOGLB to present its argument
that the South Fork of the Snake River was being underutilized. Black Dog proposed that
the IOGLB reallocated user days on the South Fork of the Snake River from the currently
licensed entities who were not using all of their user days. (IOGLB 138-174.) On June 25,

---

[1]Black Dog also holds licenses for commercial fishing services on the Main Snake River in Idaho
Falls, Idaho.

2008, Black Dog also submitted an application to amend its license to allow for boating and fishing activities on several river sections including the South Fork of the Snake River. (IOGLB 1564-70.) After conferring with the Federal Defendants, the IOGLB denied Black Dog's requests and proposals stating "there are currently no openings for new outfitter opportunities on the South Fork of the Snake River or other rivers discussed" at the June 2008 meeting. (IOGLB 310-12, 319-320, 327-331, 373.)

As to the Federal Defendants, Black Dog holds two outfitter permits: 1) a five-year Forest Service permit to guide waterfowl hunters and 2) a two-year BLM permit to conduct guided boating and fishing trips. As it did with IOGLB, Black Dog has sought additional permits from the Federal Defendants to expand its outfitting business; specifically to include guided fishing and boating on the South Fork of the Snake River. On June 13, 2008 Black Dog submitted a "formal request" for such additional permitting and asked that the Forest Service reallocate the unused days of currently licensed outfitters. (FS 4270.) The Forest Service denied the request stating Black Dog's current permit is only for waterfowl hunting, not fishing. (FS 4272.) To include fishing in Black Dog's permits would require a new use authorization which, the Forest Service stated, was not available under the Forest Plan and 1991 Snake River Plan. The Plans limits use of the resource to eight outfitting permits all of which had been issued. In order to expand the number of permits, the Forest Service noted it would need to complete a capacity study to determine whether additional permits were needed before the Forest Service could consider applications for new permits. (FS 4272.)

Black Dog made a similar request to the BLM on June 13, 2008 seeking to amend its permit to conduct commercial outfitting and guiding for fishing and boating services on the Upper Snake River. (BlackDog 2447-8.)[2] BLM denied the request on the basis that the requested areas are outside of its jurisdiction and because there were no available openings on the river sections requested. (BlackDog 2516-17.) BLM too informed Black Dog that before additional new permits could be issued a capacity study would have to be completed to determine if the resource was not being properly utilized and to demonstrate the need for another outfitter. (BlackDog 2516-17.) Black Dog made the same request again in 2010 which the BLM denied for the same reasons. (BlackDog 2637-2639.)

## 2.     Motion to Supplement Administrative Record

Black Dog seeks to modify the Administrative Record such that certain sections of the record be separated and renamed for purposes of filing its response to the Defendants' Motions for Summary Judgment. (Dkt. 96.) Such modification, Black Dog argues, will simplify and streamline the matter for the Court. (Dkt. 104, 107.) Additionally, Black Dog asks that it be allowed to supplement the Administrative Record to include certain emails which it argues are proof of retaliatory actions taken against it by Defendants. (Dkt. 96.) In a second Motion, Black Dog seeks to also supplement the record with the

---

[2] There are multiple Administrative Records submitted in this case on behalf of each of the Defendant agencies: the Forest Service, BLM, and IOGLB. (Dkt. 75, 80, 81, 88, 89, 90.) For purposes of this Order and so as to keep a clear record in this case, when citing to the Administrative Records, the Court will use the title and number stamped on to each document as it appears in the Administrative Records filed in this case.

minutes from the August 25-26, 2011 meeting of the IOGLB to support its Equal

Protection Clause claim. (Dkt. 100.)

      The Forest Service opposes the first Motion arguing the APA limits review of this

matter to the record before the agency at the time of the decision. (Dkt. 101.) As to the

Motion to supplement the record with the August 25-26, 2011 minutes of the IOGLB

meeting, the Forest Service does not oppose the request as it goes to the administrative

record submitted by the IOGLB, not the Forest service. (Dkt. 102.) The IOGLB opposes

adding the August 25-26, 2011 IOGLB meeting minutes because it is a record from a

meeting occurring some eighteen months after this case was filed. (Dkt. 103.) Likewise,

IOGLB opposes the request to add certain emails to the record as they were not before the

agency at the time of the events in question in this case. (Dkt. 106.) Because review under

the APA is limited to the record before the agency at the time of the challenged

underlying decision, IOGLB maintains these minutes are not properly apart of the

Administrative Record. Both Defendants also dispute that the record supports the claims

made by Black Dog. In reply, Black Dog maintains the IOGLB meeting minutes provide

further evidence of the unequal treatment it received and continues to receive from the

IOGLB. (Dkt. 105, 107.) Having reviewed the parties' arguments and the record herein,

the Court denies the Motions.

      As the Court has previously stated, the claims raised in Black Dog's Amended

Complaint can only be properly brought under the APA, 5 U.S.C. § 701 *et al*. (Dkt. 71.)

"The APA expressly declares itself to be a comprehensive remedial scheme: it states that

a 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review'... and then sets forth the procedures for such review" *Western Radio Serv. Co. v. United States Forest Serv.*, 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting 5 U.S.C. §§ 702, 704, 706).

In conducting an APA review, the law is clear that courts should not look outside the administrative record absent unusual circumstances. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The Court recognizes that there are certain instances where it is necessary for the reviewing Court to go beyond the administrative record, in particular, to determine whether the agency considered all relevant factors. *See Alvarado Community Hospital v. Shalala*, 155 F.3d 1115, 1124 (9th Cir. 1998) (citation omitted). However, the policy behind limiting judicial review is to assure the reviewing court limits its decision to the record before the agency, not a new record created before the Court. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The materials sought to be supplemented into the Administrative Record in this case were not present or before the agencies at the time when the events complained of in this case were allegedly occurring. As such, those materials are not ones that can be included for the Court's consideration in this matter as they did not exist at the time of the events giving rise to the claims made here. *See Camp*, 411 U.S. at 142. Furthermore, the Court denies the request to supply a modified Administrative Record. Although the Administrative Record in this case is quite lengthy, the most appropriate and economical

method for citations is for all of the parties to cite to the same Administrative Record. Adding yet another modified record to this case will only serve to lengthen the already voluminous materials. Although Black Dog's response brief cited to its own modified administrative record, the Court has been able to locate the documents referred to in the Administrative Records filed in this case as needed to rule on the Motions. As such, Black Dog's Motions are denied.

**3.     Claims Against IOGLB**

      **A.     Subject Matter Jurisdiction**

IOGLB argues the APA claims are inapplicable to it as the APA does not apply to state agencies and, for that reason, the claims against it should be dismissed. (Dkt. 92 at 9.) The Court agrees. "By its own terms, the APA does not apply to state agencies." *See Southwest Williamson County Community Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999). "Agency" is defined by the APA as "each authority of the Government of the United States," subject to certain exceptions that are not applicable here. 5 U.S.C. § 701(b)(1). Thus, the IOGLB as a state agency is not subject to review under the APA. *See Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004) ("The APA does not grant federal courts jurisdiction to review actions of state or municipal agencies."). As such, this Court lacks subject matter jurisdiction to review the IOGLB's final agency decisions.

For that reason the Plaintiff's claims made pursuant to the APA against IOGLB are dismissed.[3] The Motion for Summary Judgment is granted.[4]

### B.      Claim Preclusion

IOGLB also argues Black Dog's claims are barred against it by Claim Preclusion. In 2008, Black Dog filed suit against the IOGLB in Idaho state court regarding many of the same or substantially similar issues as have been raised in this case concerning outfitter licensing, usage, and the capacity study. Though the First Amendment and Equal Protection claims were not specifically raised in the state suit, IOGLB argues they could have been brought at that time and, therefore, are still precluded. (Dkt. 92 at 10.)

State judicial proceedings are afforded full faith and credit such that *res judicata* and other preclusion doctrines may operate to limit or exclude causes of action in federal court.  28 U.S.C. § 1738. "[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The Idaho Supreme Court has stated that "*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel). Under principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties

---

[3] IOGLB recognizes it is subject to the Idaho Administrative Procedures Act ("IDAPA") but notes Black Dog has not raised that claim and the time for doing so has long since passed. (Dkt. 92 at 9-10.)

[4] Although the Court has determined that Black Dog's claims may be procedurally barred as to IOGLB, the Court will discuss the substance of the two remaining claims as to both Defendants in considering Motions for Summary Judgment below.

upon the same claim." *Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003) (citations omitted); *see also Coeur d'Alene Tribe v. Asarco Inc.*, 280 F.Supp.2d 1094, 1117-19 (D. Idaho 2003) ("Although the literal definition of the term *res judicata* is expansive enough to cover both preclusion of relitigation of the same cause of action and relitigation of the same issue, the modern tendency is to refer to the aspect of the doctrine that precludes relitigation of the same issue in a separate cause of action as collateral estoppel, and to refer to that aspect preventing relitigation of the same cause of action as *res judicata*.") (quotations and citations omitted)).

"*Res judicata* thus applies to protect litigants from the burden of litigating the same cause of action with the same party or its privity." *Coeur d'Alene Tribe*, 280 F.Supp.2d 1094, 1117-19 (D. Idaho 2003) (citing *Hindmarsh v. Mock*, 57 P.3d 803 (Idaho 2002)). *Res judicata* "bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made. *Lohman*, 78 P.3d at 386 (citing *Hindmarsh*, 57 P.3d at 805 (citations omitted)). For *Res judicata* to preclude litigation the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question. *Coeur d'Alene Tribe*, *supra* (citations omitted). "The purposes of these judicially created rules are to conserve judicial

resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *Id.* (citation omitted).[5]

Here, Black Dog agrees the first element of claim preclusion is met as the same parties are involved in both cases. However, Black Dog maintains claim preclusion does not apply here because the actual claims at issue in this matter were not decided in the state court action. (Dkt. 95 at 4.)

The state court action was filed in the Seventh Judicial District of the State of Idaho, in and for the County of Bonneville, Case 08-6407. (Dkt. 92-4, Ex. A.) There, Black Dog sought judicial review of IOGLB's final order of September 18, 2008 and underlying matters regarding its request to "equitably reallocate underutilized and/or unutilized commercial fishing activities on the South Fork of the Snake and [IOGLB]'s refusal to [so reallocate]." (Dkt. 92-4, Ex. A.) Notably, the state complaint alleges "the current system for allocating commercial fishing activities on the South Fork of the Snake River does not provide equal protection under the United States or Idaho Constitutions to Black Dog....the IOGLB's actions were in violation of constitutional provisions of the

---

[5] The Idaho Supreme Court has recognized that the three fundamental purposes served by *res judicata* are:

> First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims. The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.

*Lohman*, 78 P.3d at 386.

State and Federal Constitutions, including without limitation, rights of due process, equal protection under the laws and a fundamental right to free commerce...." (Dkt. 92-4, Ex. A at 5 and Ex. B at 5.) The state district court determined Black Dog lacked standing to bring its claims because it held no property rights to the license it sought to obtain. (Dkt. 92-4, Ex. H.) Black Dog filed an appeal but later stipulated to dismiss the appeal. (Dkt. 92-4, Ex. I-K.)

Having reviewed the complaint filed in the state court matter and the surviving claims in this case, the Court finds claim preclusion does not apply here. There is no dispute that the parties are the same in this case as those parties who litigated the state case. (Dkt. 95 at 4.) As to the second element for claim preclusion, the Court finds the claims raised in this case are or should have been raised and litigated in the state case. Black Dog alleged an Equal Protection claim in his state complaints as well as generalized constitutional claims that are the same as those raised in this matter against IOGLB. (Dkt. 92-4, Ex. A, B.) The factual basis making up the claims is also the same. Though Black Dog disputes this, arguing its disparate treatment allegations involved continuing actions outside of the dates of those alleged in the state court matter, this argument misses the point. The claims are the same. That Black Dog continues to challenge the same actions by IOGLB following the dismissal of the state court case is of no moment; the fact remains the claims and the basis alleged to support the claims against IOGLB are the same as those raised and decided before the state court.

As to the final requirement for claim preclusion, a final adjudication on the merits, it is less clear whether this factor is met. After the state district court entered its order dismissing Black Dog's petition for judicial review, Black Dog filed an appeal to the Idaho Supreme Court. (Dkt. 92, Ex. H, I.) The state court case was ultimately concluded when the parties filed a joint stipulation to dismissal of appeals and the Idaho Supreme Court entered an order granting the same. (DKt. 92, Ex. J, K.) The stipulation was made pursuant to Idaho Appellate Rule 33 which does not specify whether such a dismissal is with or without prejudice. The stipulation itself also does not state whether it was with or without prejudice. (Dkt. 92-4, Ex. I, K.)

In considering the scope of claim preclusion, or res judicata, the Idaho Supreme Court has summarized it as follows: "[A] valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Diamond v. Farmers Group, Inc.*, 804 P.2d 319, 323 (Idaho 1990); *see also Lohman*, 78 P.3d at 386. Because the stipulation to dismiss the appeal filed in the state court matter did not specify that it was "with prejudice," whether there was a valid final judgment entered is not clear and it leaves open the possibility that the dismissal of the appeal may not have preclusive effect.

For instance, a voluntary dismissal of an action done by stipulation of the parties under Idaho Rule of Civil Procedure 41(a)(1), is interpreted to be "without prejudice" unless otherwise stated in the notice of dismissal or stipulation subject to one exception that does not apply here. *See* Idaho R. Civ. P. 41(a)(1). Under this reasoning, because the

stipulation to dismiss the appeal filed in this case does not specify that it was with prejudice, it seems the presumption would be that the dismissal was without prejudice and, arguably, not a final adjudication of the merits of the claims.[6] Moreover, the state district court's dismissal of Black Dog's petition was based on a lack of standing, not necessarily a ruling going to the substance of Black Dog's claims. (Dkt. 92, Ex. H.) As such, the Court concludes that claim preclusion does not apply in this case as it does not appear that a final adjudication of the merits of the claims was had in the state court matter. Accordingly, the Motion for Summary Judgment is denied in this respect.

**3.      Violation of the First Amendment by Retaliation**

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 896 (2010). "Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Id*. at 898 (citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (striking down content-based restriction)). "Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others." *Id.* at 899 (citation omitted).

---

[6] *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[D]ismissal ... without prejudice" is a dismissal that does not "operat[e] as an adjudication upon the merits," [Federal ]Rule 41(a)(1), and thus does not have a res judicata effect.); *Semtek Intern. Inc. V. Lockheed Martin Corp.*, 531 US 497, 505 (2001) ("The primary meaning of "dismissal without prejudice,"...is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from other courts, but its primary meaning relates to the dismissing court itself.") (contrasting Federal Rule of Civil Procedure 41 subsections (a) and (b) and holding the state law for preclusion applies to federal courts sitting in diversity jurisdiction absent any conflict with federal interests).

"As instruments to censor, these categories are interrelated: Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id*. The Supreme Court has recognized "our longstanding recognition that the Government may not retaliate for exercising First Amendment speech rights...." *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) (citing *Rankin v. McPherson*, 483 U.S. 378 (1987) (landowner brought a *Bivens* case against the BLM).

Black Dog's First Amendment claim appears to be premised on the alleged retaliatory actions the BLM and IOGLB took towards it as Black Dog has requested public information and sought to obtain outfitting permits/licenses and/or reallocation of unused days. (Dkt. 56.) Defendants argue the First Amendment retaliation claim has no merit as Black Dog cannot show that the Defendants have taken any retaliatory action against it. (Dkt. 91 at 17.) Defendants point out that no new permits for the area have been issued to Black Dog or any other outfitters, as they are not available at this time. (Dkt. 91 at 17.) Black Dog counters that its retaliation claim is based on "multiple instances of the Defendants' intentional retaliation against" it because of its investigation into the Defendants' management of the resource at issue. (Dkt. 95 at 6.) The instances of retaliation Black Dog points to are its FOIA requests, internal emails of the Defendants, and other actions by Defendants to limit its existing permits which Black Dog argues evidence their "general dislike" of Black Dog. (Dkt. 95 at 7-13.)

Although this claim survived the Motion to Dismiss, it does not overcome summary judgment. Black Dog alleges its inquires and expressions of concern are

protected speech under the First Amendment. (Dkt. 56 at 23) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). Black Dog has failed, however, to show any retaliation by the Defendants attributable to Black Dog's exercise of its First Amendment rights. The First Amendment claim alleges retaliation against Black Dog for "expressing [its] concerns regarding the use of allocated resources, and further, for requesting information through the Freedom of Information act" regarding whether the resources were being properly utilized. (Dkt. 56 at 22.) The retaliatory actions, Black Dog alleges, include Defendants attempts at deterrence by dismissing Black Dog's requests as "quickly as possible" and attempting to limit Black Dog's use of its waterfowl permit in a manner not consistent with its historic use. (Dkt. 56 at 23.) The Court concludes that the particular instances of allegedly violative conduct by Defendants described in Black Dog's Complaint and Response brief do not give rise to disputed facts as to the claim of retaliation in violation of the First Amendment. (Dkt. 56 and 95 at 7-13.) Though the allegations regarding Defendants' conduct may show the contentious nature of the dealings between the parties, they do not allege retaliation on the part of the Defendants as to Black Dog's First Amendment rights.

The "requests" Defendants allegedly denied in retaliation are Black Dog's attempts to have new/additional permits be issued to it for outfitting services on the South Fork of the Snake River. This is not retaliation. Such permits are not available at this time and the Defendants do not have the ability or authority to issue any new permits without first satisfying the applicable statutory and regulatory requirements for issuance of new

permits in the area – including completion of a capacity study. Thus, Defendants denial of the application was not retaliation.

As to Black Dog's arguments concerning the Defendants' actions showing their "general dislike" of Black Dog, the IOGLB counters that these were not alleged in the Complaint. (Dkt. 108 at 6.) The Court disagrees with IOGLB. The First Amendment Claim as stated in the Complaint alleges retaliation against Black Dog for its expressions of its concerns regarding the use of allocated resources and requesting information through FOIA. (Dkt. 56 at 22.) The Complaint goes on to allege the Defendants quickly dismissed Black Dog's requests and attempted to limit its use of its waterfowl permit in a manner not consistent with its historic use in an effort to deter Black Dog in retaliation for its inquisitiveness concerning the use of the resource. Specifically, the claim alleges the

> denial of Black Dog's application for an outfitter's license and the above attempt to place limits on Black Dog's waterfowl permit is an unconstitutional retaliation on the part of the Defendants. Plaintiff's inquiries and expressions of concern are protect speech under the First Amendment.

(Dkt. 56 at 23) (citations omitted). The Court finds the claim has been stated in the Complaint.

Although alleged in the Complaint, the fact remains that Black Dog has not pointed to facts evidencing retaliation by the Defendants as to either their denial of its requests for permits/licenses or any limitations placed on its existing waterfowl permit. The denials of Black Dog's applications and requests for permits/licenses were not retaliation but, instead, made because there were no licenses or permits left to be issued.

Furthermore, the alleged actions by Defendants to limit Black Dog's existing waterfowl permit are contrary to the record. The Administrative Record as it existed at the time of the events in question here reveals that Black Dog was granted a major amendment to its waterfowl permit whereby Black Dog is allowed to use certain boating services to shuttle its clients to the waterfowl hunting areas for which it is allowed to hunt. (IOGLB 265, 1553-1558, 1562.) Black Dog disputes this arguing the permit amendment was stopped by the IOGLB Director, Jake Howard. (Dkt. 95 at 8.) The Administrative Record, however, reflects that an amendment to allow Black Dog to perform certain boating activities was approved as requested by Mr. Howard at the April 24, 2008 IOGLB meeting, which Black Dog attended. (IOGLB 1562.)

Finally Black Dog argues the IOGLB applied the regulations governing outfitters more aggressively towards Black Dog than to other licensed outfitters in retaliation for its information requests. In particular, as to Black Dog's advertisements and marketing of its outfitting guiding services. (Dkt. 95 at 8-9.) Materials concerning these issues in the Administrative Record reveal that Black Dog entered into a Stipulation and Consent Agreement for Informal Disposition concerning these actions wherein it admitted grounds existed upon which it could be disciplined. (IOGLB AR 263-266, 269-279) (FS 4207-09, 4294-98.)[7] As such, the record does not substantiate any First Amendment retaliation claim. Black Dog's argument only serves to dispute the events to which it has already

---

[7] To the extent Black Dog may reference materials outside of the Administrative Records as evidence of its arguments of continuing disparate treatment by the Defendants, they are not appropriate for the Court's consideration in this APA case and the Court has not considered the same.

admitted fault. Furthermore, as the Court previously determined, the claims against the IOGLB are procedurally barred.

Black Dog has raised similar allegations of targeted punishment toward it by the BLM. (Dkt. 95 at 9-11.) Black Dog argues BLM has singled it out solely in retaliation for its efforts to obtain information concerning the under-utilization of the resources. Again, the Administrative Record does not support Black Dog's characterization of BLM's actions. Black Dog's claims concern, in one instance, an exchange of letters in October of 2007.[8] BLM issued a letter to Black Dog on October 1, 2007 concerning its compliance with applicable laws and regulations for permit holders. (FS 4210.) On October 23, 2007, Black Dog's representative responded by letter questioning whether Black Dog was in violation as well as the reasoning behind the policy BLM had alleged it violated. (FS 4212-15.) A similar circumstance of alleged false accusations by the BLM is cited by Black Dog as occurring in April of 2008. Black Dog also contends the BLM refused to allow him to provide comments concerning outfitting opportunities on the South Fork of the Snake River in November of 2007, failed to comply with all of its FOIA requests, and improperly relied upon and misrepresented facts surrounding the capacity study. (Dkt. 95 at 11-13.) These arguments are simply not supported by the Administrative Records filed in this case. Black Dog was allowed to comment before the Defendant agencies. (FS 4090, 4109, 4113, 4124, 4165, 4171, 4277) (BlackDog 482-90, 2463-98, 2505-2515,

---

[8] The Administrative Record contains other documents related to the alleged violations of regulations by Black Dog (Black Dog 2371-2399.)

2521, 2539, 3802.) The Defendants responded to Black Dog's FOIA requests. (FS 4485-4522) (BlackDog 2499, 2510, 2519, 2527, 2530, 2533, 2545, 2580, 2582.) Finally, Defendants did not misrepresent the status of the capacity study. (FS 4058, 4174, 4255) (BlackDog 361-406, 202-2025, 2044-2242, 2542-44.) Because the allegations are contrary to the Administrative Records, the Court finds Black Dog has failed to point to genuine issues of material fact supporting its First Amendment claim. The Motions for Summary Judgment are granted on this claim.

**4.    Violation of Equal Protection**

The Equal Protection Claim is brought under the Fifth and Fourteenth Amendments alleging disparate treatment between Black Dog and the outfitters holding permits/licences on the South Fork. (Dkt.  56, p. 26.) "Both the Equal Protection Clause and the APA prohibit agencies from treating similarly situated petitioners differently without providing a sufficiently reasoned justification for the disparate treatment." *Muwekma Ohlone Tribe v. Kempthorne*, 452 F.Supp.2d 105, 115 (D.D.C. 2006) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1102-03 (D.C. Cir. 2005) ("To prevail on [its] equal protection claim, [a plaintiff must] demonstrate that [it] was treated differently than similarly situated [parties] and that the [agency's] explanation does not satisfy the relevant level of scrutiny.") (citations omitted).

In its Equal Protection Claim Black Dog argues it applied for and was denied four outfitter permits and has been subject to disparate treatment. (Dkt. 95 at 13.) Black Dog's claim is that it is similar to the current permit holders but that it has been treated

differently from them, by being denied permits and reprimanded by Defendants, without any reasoned justification. Black Dog's allegations liken it to "other permit holders" and, specifically, to the two outfitters who hold the majority of the existing allocated permits. (Dkt. 56, pp. 26-27.) In doing so, Black Dog argues it has not been treated in an equal manner to the other "similarly situated" outfitters who, Black Dog asserts, Defendants have treated more favorably than it. (Dkt. 95 at 14.)

Defendants counter arguing this claim should be summarily dismissed because Black Dog has failed to show they intentionally, and without rational basis, treated it differently from others who are similarly situated. (Dkt. 91 at 18.) Again, Defendants point out, no new permits have been issued to any outfitters during the time frame in which Black Dog applied for these four permits. (Dkt. 91 at 19.) Before any new permits are available, the Defendants state, a visitor capacity study must be completed to accurately assess the need, if any, for such new permits. Thus, Black Dog was not denied any permits. There simply were no permits available.

Both Defendants also point out that Black Dog is not in the same class as other licensed outfitters because Black Dog is not a holder of the outfitters licenses it seeks for the South Fork of the Snake River. (Dkt. 92 at 16) (Dkt. 109 at 5.) Instead, IOGLB argues, Black Dog falls into a class of "potential applicants" who desire to obtain a license. Black Dog has not demonstrated how it was treated differently from others who were similarly situated. Defendants maintain no Equal Protection violation occurred. As an outfitter who seeks a license/permit on the South Fork, Black Dog has not been treated

disparately. Just the opposite, Black Dog was treated the same as every other outfitter who applied for South Fork permits/licenses as they were all denied universally based on the fact that no such licenses are available. (Dkt. 92 at 17-18) (Dkt. 109 at 5.)

It is true that Black Dog currently holds certain permits and licenses to provide outfitting services on the Snake River in Idaho. However, Black Dog does not hold the same permits and licenses as other outfitters. Those are the permits and licenses Black Dog seeks to acquire. Thus, Black Dog is not in the same class as current permit holders but is instead situated within the same class as other applicants for those permits and licenses. It is undisputed that Defendants have denied all applications and requests for issuance of new or additional permits and licenses which Black Dog seeks here. As such, Black Dog was not treated differently by Defendants from any other permit applicant. The Court concludes Black Dog has failed to show a genuine issue of material fact exists that its Equal Protection rights were violated.

In addition, Black Dog's Amended Complaint raises the "class of one" argument. (Dkt. 56, p. 26.) Successful Equal Protection claims have been recognized when brought by a "class of one" where the plaintiff has alleged that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Section 1983 action). The Ninth Circuit, however, has indicated that such actions are disfavored because they threaten to "provide a federal cause of action for review of almost every executive or administrative government decision." *Engquist v. Or. Dept. of*

*Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (discussing a case alleging employment discrimination by the government). For the same reasons articulated above, the Court finds this case is not one in which Black Dog can be characterized as being in a "class of one." Black Dog has not been treated differently from others similarly situated. Defendants have not issued any requests or applications for permits and licenses to any new applicants; Black Dog included. The Motions for Summary Judgment are granted as to this claim.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Federal Defendants' Motion for Summary Judgment (Dkt. 91) is **GRANTED** and the IOGLB's Motion for Summary Judgment (Dkt. 92) **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that Plaintiff's Motions to Modify and Supplement Administrative Record (Dkt. 96, 100) are **DENIED**.

DATED:  **May 30, 2012**

Honorable Edward J. Lodge
U. S. District Judge